795 S.E.2d 509

Patricia S. REED, Commissioner of the
West Virginia Division of Motor
Vehicles, Petitioner

v.

Joshua D. BECKETT, Respondent

No. 15–1044

Supreme Court of Appeals of West Virginia.

Submitted: October 12, 2016

Filed: October 26, 2016

Patrick Morrisey, Attorney General, Elaine L. Skorich, Assistant Attorney General, Charleston, West Virginia, Counsel for the Petitioner.

Jeffry A. Pritt, Esq., Pritt Law Firm, PLLC, Union, West Virginia, Counsel for the Respondent.

Chief Justice Ketchum:

In this appeal from the Circuit Court of Monroe County, we are asked to consider whether a person may lose his/her driver's license because, while under the influence of alcohol, he/she operated a vehicle[1] solely upon private land. West Virginia Code § 17C–5–2a(a) [1983], at its core, prohibits intoxicated driving "anywhere within the physical boundaries of this State." Through the adoption of this statute, the Legislature extended West Virginia's driving-under-the-influence statutes to proscribe driving while intoxicated upon private property. Hence, we hold that an individual may lose his/her driver's license if they are found driving a vehicle anywhere within the physical boundaries of West Virginia while under the influence of

alcohol (and/or drugs), even if the vehicle is driven only upon private property not open to the general public.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The essential facts in this case are undisputed. Around 1:00 a.m. on February 4, 2012, respondent Joshua Beckett was driving an unlicensed all-terrain vehicle ("ATV") on family-owned farm land, in a field that was not open to the public, in Monroe County, West Virginia. Mr. Beckett wrecked the ATV and was injured. A companion called 911 and then transported Mr. Beckett to a highway to be loaded into an ambulance. An emergency medical technician in the ambulance noted the smell of alcohol on Mr. Beckett, and later testified that Mr. Beckett said he had consumed alcohol before he wrecked.

At the hospital, tests allegedly showed Mr. Beckett's blood alcohol content was 0.17%.[2] A sheriff's deputy thereafter charged Mr. Beckett with the criminal offense of driving while under the influence of alcohol ("DUI") with a blood alcohol content greater than 0.15% (also called aggravated DUI).[3] That charge was ultimately dismissed by a magistrate.

While the criminal charge was pending, the sheriff's deputy notified the petitioner, the Commissioner of the West Virginia Division of Motor Vehicles ("Commissioner"), that Mr. Beckett had been driving a motor vehicle in West Virginia while under the

---

1. " 'Vehicle' means every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks or wheelchairs." W.Va. Code § 17C–1–2 [2002]. Additionally, a person "who drives a motor vehicle in this State" impliedly consents to the license revocation procedures outlined in W.Va. Code §§ 17C–5A–1 to –4. W.Va. Code § 17C–5A–1(a) [2008].

2. Mr. Beckett argues that these blood test results are inadmissible and cannot be used against him. We leave resolution of that argument to the circuit court on remand.

3. The law then in effect, W.Va. Code § 17C–5–2(e) [2010], provided in full:

(e) Any person who drives a vehicle in this state while he or she has an alcohol concentration in his or her blood of fifteen hundredths of one percent or more, by weight, is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for not less than two days nor more than six months, which jail term is to include actual confinement of not less than twenty-four hours, and shall be fined not less than two hundred dollars nor more than one thousand dollars. A person sentenced pursuant to this subdivision shall receive credit for any period of actual confinement he or she served upon arrest for the subject offense.

W.Va. Code § 17C–5–2 was modified in 2015 and 2016, and paragraph (e) was substantially amended. However, none of those changes affect the current case.

influence of alcohol. Effective May 9, 2012, the Commissioner entered an order revoking Mr. Beckett's privilege to drive for 45 days. Mr. Beckett appealed and the revocation was stayed.

A hearing was conducted by the Office of Administrative Hearings. Mr. Beckett argued to the administrative law judge that his license could not be revoked because he was driving the unlicensed ATV only upon private, family-owned land, and there was no evidence he was driving on a public street or highway. The administrative law judge rejected his argument and upheld the Commissioner's revocation order.

Mr. Beckett then appealed to the circuit court and made the same argument. In an order entered September 30, 2015, the circuit court reversed the decision from the Office of Administrative Hearings. The circuit court concluded that because Mr. Beckett's "actions did not occur on land open to public use," the Commissioner had no jurisdiction to revoke Mr. Beckett's driving privileges.

· The Commissioner now appeals the circuit court's September 30, 2015, order.

## II.

### STANDARD OF REVIEW

■ "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." [4]

## III.

### ANALYSIS

■ The Commissioner may administratively revoke a person's license to drive if the Commissioner determines that the person violated a criminal DUI statute.[5] The statute under which Mr. Beckett was charged, W.Va. Code § 17C–5–2(e) [2010], criminalized being a "person who *drives a vehicle in this state*" while being under the influence (emphasis added). The parties' arguments center upon what it means to drive a vehicle in this State. The question presented by the parties is this: does the Commissioner have the authority to revoke the license of a person who drives a vehicle under the influence anywhere within the physical boundaries of this State? Or is the Commissioner's administrative jurisdiction limited to DUI offenses that occur only on public streets, public highways, and those private thoroughfares open to public use?

West Virginia Code § 17C–5–2a(a) [1983] provides the following definition of the phrase "in this State," when it is used in a DUI statute:

> For purposes of this article [pertaining to criminal DUI] and article five-A [pertaining to administrative license revocation for DUI] of this chapter, the phrase "*in this State*" *shall mean anywhere within the physical boundaries of this State*, including, but not limited to, publicly maintained streets and highways, and subdivision streets or other areas not publicly maintained but nonetheless open to the use of the public for purposes of vehicular travel.

(Emphasis added).

Mr. Beckett argues that the circuit court correctly found that any interpretation of "in this State" within W.Va. Code § 17C–5–2a(a) must be limited by this Court's 1980 holding in *State v. Ball*.[6] In *Ball*, the Court found that a defendant could not be charged for driving while intoxicated on a private parking lot, because the law then in effect limited the application of the DUI statutes "exclusively to the operation of vehicles upon streets and highways[.]" [7] The circuit court was persuaded by our statement in *Ball* that "if chapter 17C [containing our DUI law] is to apply elsewhere than upon streets and highways a

4. Syl. pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

5. *See* W.Va. Code § 17C–5A–1(c) [2008].

6. *State v. Ball*, 164 W.Va. 588, 594, 264 S.E.2d 844, 847 (1980).

7. The pertinent statute, W.Va. Code § 17C–2–1, had been adopted in 1972. The defendant was arrested in 1976. *State v. Ball*, 164 W.Va. at 593, 264 S.E.2d at 847.

different place must be specifically set forth" by the Legislature.[8] The circuit court applied this language from *Ball* interpreting the DUI laws from the 1970s to conclude the Commissioner has no jurisdiction to apply our DUI laws to an intoxicated defendant driving on private farm land.

The Commissioner points out that in 1981, subsequent to *Ball*, the Legislature amended the DUI statutes, adopted W.Va. Code § 17C–5–2a(a) to give an expanded meaning to the phrase "in this State," and effectively overruled *Ball*. The Commissioner contends that the plain meaning of this statute, which has not been amended since 1983, is that a person cannot drive anywhere within the physical boundaries of this State while under the influence. We agree with the Commissioner that the statute is unambiguous.

■■■■ In deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." [9] "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." [10] "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." [11]

W.Va. Code § 17C–5–2a(a) is clear and unambiguous. Through its definition of the phrase "in this State," the Legislature made the act of driving while intoxicated a revocable offense "anywhere within the physical boundaries of this State." The Legislature chose to structure our DUI statutes to regulate the condition of the driver, not the locale in which the driving is taking place. Thus, the Legislature expressed its plain intent to prohibit an intoxicated person from driving a vehicle anywhere in West Virginia, whether on public roads or across private land.

Mr. Beckett cites a case from the State of Washington, involving DUI laws similar to West Virginia's, where the court concluded that it was an unreasonable extension of the legislature's police power to prohibit intoxicated persons from driving on private land.[12] He argues that the same reasoning applies here: while drunk drivers are generally a menace to society whose conduct should be regulated, this Court should read the statute to say that a driver on private land, who poses no danger to the general public, is exempt from regulation.

Our research, however, reveals court cases from nearly two dozen jurisdictions that have reached the exact opposite conclusion: if state law criminalizes the operation of a motor vehicle while intoxicated, and the law contains no geographic constraint, then the courts will not read into the statute a requirement that the vehicle be operated exclusively on a public highway.[13] These courts

---

**8.** 164 W.Va. at 594, 264 S.E.2d at 847.

**9.** *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995). *See also* Syl. pts. 1 and 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968) ("1. Courts always endeavor to give effect to the legislative intent, but a statute that is clear and unambiguous will be applied and not construed. 2. Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."); Syl. pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."); Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which

is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

**10.** Syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970).

**11.** *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted).

**12.** *State v. Day*, 96 Wash.2d 646, 638 P.2d 546, 548 (1981).

**13.** *See, e.g., Madden v. State*, 252 Ga.App. 164, 555 S.E.2d 832, 834 (2001) (Statute making it unlawful to "drive or be in actual physical control of any moving vehicle" while intoxicated "draws no distinction between driving on public

have generally concluded that the phrase "within this state" is not ambiguous and indicates the legislature's intent to prohibit operation of a vehicle while intoxicated anywhere

within the boundaries of the state, whether upon public or private land. Courts in all of our neighboring states have reached the same conclusion.[14]

roads versus private thoroughfares."); *State v. Allen*, 314 S.C. 539, 431 S.E.2d 563, 564 (1993) (Statute making it "unlawful for any person under the influence of intoxicating liquor 'to drive any vehicle within this State' ... by its terms is not limited to public highways but applies anywhere within our State boundaries."); *Sanders v. State*, 312 Ark. 11, 846 S.W.2d 651 (1993) (statute making it "unlawful ... for any person who is intoxicated to operate or be in actual physical control of a motor vehicle" applied when driving vehicle into a ditch on private, company road); *People v. Malvitz*, 11 Cal.App.4th Supp. 9, 14 Cal.Rptr.2d 698, 701 (1992) (DUI statute applicable "to vehicles upon the highways and elsewhere throughout the State" prohibits "persons from driving anywhere in California" while intoxicated, including gated storage area); *State v. Watson*, 71 Haw. 258, 787 P.2d 691, 692 (1990) (Nothing in DUI statute "requires that the operation of a vehicle while under the influence of intoxicating liquor be done on a public highway."); *Chilcutt v. State*, 544 N.E.2d 856, 858–59 (Ind. Ct. App. 1989) ("the statute prohibiting operating a vehicle while intoxicated applied to not only operation of a vehicle while intoxicated upon a public highway, but also prohibits operation of a vehicle while intoxicated on private property." Defendant was found near overturned pickup truck on private property in rural area.); *Allen v. Girard*, 155 Ariz. 134, 745 P.2d 192, 194 (Ct. App. 1987) (statute making it "unlawful ... for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state" applied when driving vehicle in a private subdivision); *State v. MacDonald*, 527 A.2d 758, 759 (Me. 1987) (Statute regulating person who "operates or attempts to operate a motor vehicle" while intoxicated "is plainly applicable to private as well as public ways."); *Zink v. State*, 448 So.2d 1196, 1197 (Fla. Dist. Ct. App. 1984) ("The phrase 'within this state' is not ambiguous and very lucidly indicates the legislature's intent to encompass all lands in the state." Intoxicated defendant was "spinning donuts" on a private construction site.); *Dayhoff v. State, Motor Vehicle Div.*, 42 Colo.App. 91, 595 P.2d 1051, 1053 (1979) (statute criminalizing DUI "upon streets and highways and elsewhere throughout the state" interpreted to mean "the substantive offenses of driving under the influence and driving while impaired apply regardless of where the 'driving' occurs," including a private parking lot and a one-vehicle accident on private property); *People v. Guynn*, 33 Ill.App.3d 736, 739, 338 N.E.2d 239, 241 (1975) (in DUI statute, "the words 'elsewhere throughout the State' encompass all areas of the State, public or private."); *State v. Layssard*, 310 So.2d 107, 110 (La. 1975) ("The statute (R.S. 14:98) does not limit the prohibition of drunk driving to highways, and

evidence of driving while intoxicated, even in the neighbor's yard, would constitute some evidence of the offense."); *State v. Bruce*, 126 Vt. 367, 231 A.2d 107, 109 (1967) (DUI statute "does not provide that the offense here involved must have been committed on an established, laid out, or public highway."); *Farley v. State*, 251 Miss. 497, 170 So.2d 625, 627 (1965) ("[N]o vehicle, which also included a motor vehicle, can be lawfully driven within this state in any place, be it public or private, if the driver is under the influence of intoxicating liquor, or the other drugs, etc., condemned by the statute. These prohibitions are directed toward the condition of the operator."); *State v. Piette*, 16 Conn.Supp. 357, 357 (Super. Ct. 1949) (statute providing "No person shall operate a motor vehicle while under the influence of intoxicating liquor or of any drug" applies to operation of vehicle on private property); *State v. Weston*, 202 S.W.2d 50, 53 (Mo. 1947) (DUI statute "does not require that the motor vehicle must have been operated upon a public highway."); *State v. Dowling*, 204 Iowa 977, 216 N.W. 271 (1927) (Statute applied to "Whoever while in an intoxicated condition operates a motor vehicle." "Nowhere in said legislation is there any indication that the offense contains the prerequisite of commission upon a public road or street[.]"). See also, Damian Edward Okasinski, "Applicability, to operation of motor vehicle on private property, of legislation making drunken driving a criminal offense," 52 A.L.R.5th 655 (1997).

**14.** *See, e.g., Gray v. Com.*, 23 Va.App. 351, 477 S.E.2d 301, 302 (1996) (statute making it "unlawful for any person to drive or operate any motor vehicle" under the influence applied to driving vehicle in private parking lot); *Lynch v. Com.*, 902 S.W.2d 813, 814 (Ky. 1995) ("The legislature, by effectuating a change in the language from *upon a highway* to *anywhere in this state*, explicitly intended to extend the prohibition against driving while intoxicated beyond the public highways so as to include the entire state."); *Locklear v. State*, 94 Md.App. 39, 614 A.2d 1338, 1341 (1992) (the provisions of DUI statute "apply whether one is driving on or off a highway"); *State v. Frank*, 2 Ohio App.3d 392, 442 N.E.2d 469, 470 (1981) (Statute saying no intoxicated person "shall operate any vehicle ... within this state" applies to the operation of a vehicle on private property as well as public streets and highways); *Commonwealth v. Campbell*, 28 Pa. D. & C. 260, 266 (1936) ("Public safety is not restricted to public highways. There is no place in this Commonwealth, and there should be none, where any of the people may be denied the protection of its laws regarding safety to life and limb. Public safety obliterates all pri-

We conclude that the Legislature's definition of the phrase "in this State" in W.Va. Code § 17C–5–2a(a) [1983] extends the reach of our DUI laws to any individual driving a vehicle within the physical boundaries of West Virginia, even if the vehicle is driven only upon private property not open to the general public. Furthermore, *State v. Ball* [15] is overruled to the extent that it conflicts with this opinion.

## IV.

### CONCLUSION

The circuit court in this case determined that, because of this Court's ruling in *Ball*, Mr. Beckett's operation of an ATV on private family-owned land could not be regulated by the Commissioner under W.Va. Code § 17C–5–2a(a). This conclusion was plainly a wrong interpretation of our DUI statutes and must be reversed.

The circuit court's order of September 30, 2015, is reversed, and the case is remanded for further proceedings.

Reversed and remanded.

JUSTICE BENJAMIN dissents, and reserves the right to file a separate opinion.

The most solemn duty of an American court lies in its pledge to protect the rights and liberties of private citizens from encroachment by the State. Here, the Majority not only badly misread applicable statutory law, it also sanctioned the infringement of two of our most basic natural rights: the right to do what one wants to do in the privacy of one's estate so long as another is not harmed and the right to be left alone. As trustees of the wisdom and vision of our founders, this Court failed mightily.

It is unquestioned that Joshua Beckett's use of his property was a matter of his own free choice. That it may be said that operating an all-terrain vehicle ("ATV") exclusively on one's private property, *i.e.*, the family farm, after having consumed alcohol was a "stupid" use of the property misses the point. So long as Mr. Beckett did not infringe upon the rights of others or put others at risk, it was his choice to act "stupidly." As set forth by Justice Potter Stewart:

> The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth, a "personal" right .... In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other.

*Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552 (1972).

The essence of our rights lies not in words on a paper, but in their full realization from the enjoyment we experience in the pursuit of our daily affairs.[1] Indeed, it is the use of one's estate from which life and liberty take form.[2] In classic Jeffersonian thought, embodied in the opening sentences of the Declaration of Independence, the legitimate end of government is to protect the private realm whereby citizens may freely embrace their

vate boundaries and transcends all private interests.").

**15.** *State v. Ball*, 164 W.Va. 588, 264 S.E.2d 844 (1980).

**1.** [I believe] that a right to property is founded in our natural wants, in the means with which we are endowed to satisfy these wants, and the right to what we acquire by those means without violating the similar rights of other sensible beings; that no one has a right to obstruct another, exercising his faculties innocently for the relief of sensibilities made a part of his nature ....
Letter of Thomas Jefferson to P.S. DuPont de Nemours, April 24, 1816, *Writings*, v.10, p.24.

**2.** The realization of liberty lies in terms of non-interference by public authorities in the lives of citizens. This concept, essential to our nation's founding and our Virginia heritage, derives from the political thoughts of John Locke, Adam Smith, George Mason, Thomas Jefferson, James Madison, and our other Founders. The Founders firmly believed that the human right to private property had to be protected as the basis for individual liberty, a free society and a free economy. The limitation on state power, being so clearly linked to liberty, derives from our natural rights (*i.e.*, the inalienable rights that are independent of and antecedent to the institutions of men and governments—thereby not being subject to the whims or wants of such institutions) and is embodied in our Declaration of Independence, the United States Constitution, the Constitution of West Virginia, the Virginia Declaration of Rights, and the Constitution of Virginia.

natural rights, not to intrude into such private estates thereby frustrating the exercise of such rights.[3]

It is from this proposition of natural law, upon which our society is founded, that one has the unfettered right to act as he will in the privacy of his home and property, whether that be smart or stupid, save only that he be competent and that he not infringe the rights of others.[4] The West Virginia Legislature, in expressly limiting by definition the reach of West Virginia Code § 17C-5-2(e) (2010), understood this. The Majority of this Court did not.

Driving under the influence of an intoxicant may be a serious threat to the individual rights of other citizens. The power of the State to monitor and regulate the behavior of a given citizen with respect to such driving derives from the obligation of the State to protect the health, safety and general welfare rights of its other citizens. This is commonly referred to as the "police power" doctrine and is based in the Tenth Amendment of the United States Constitution as restricted by the Privileges and Immunities Clause made applicable to the various states by the Fourteenth Amendment.[5] In other words, government control and regulation over an individual's private use and enjoyment of his or her property must be reasonable and have a clear relation to some legitimate purpose which protects the rights of other citizens; otherwise, the State's actions constitute an unwarrantable invasion of that individual's natural rights.

Proper governmental action is calculated to prevent a conflict of rights and to insure to each citizen the uninterrupted enjoyment of his or·her own rights, so far as is reasonably consistent with a like enjoyment of rights by others. Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 572 (Little, Brown & Co. ed., 1868). Thus, the exercise of one's rights should not be restricted by the state unless such a restriction is both necessary and proper. West Virginia's Legislature understood this in enacting West Virginia Code § 17C-5-2(e) (2010), by utilizing language, defined elsewhere in the statutory section, which expressly *excludes* Mr. Beckett's private behavior herein from coverage under the statute.

West Virginia Code § 17C-5-2(e) (2010), in effect at the time Mr. Beckett operated his ATV, proscribes any intoxicated person from driving "a vehicle in this state." At issue is whether Mr. Beckett's conduct comes within this language. It does not. The Majority focuses exclusively on the phrase "in this state," misapplying its statutory definition. The Majority fails completely to consider the statutory definition of the term, "vehicle." This was error upon error.

The Majority correctly looks to West Virginia Code § 17C-5-2a(a) to define "in this state." In so doing, however, the Majority

3. This justification for government by Jefferson echoes the moral philosophy of John Locke, in his *Second Treatise on Government* (1690). In a letter, Jefferson wrote:
> Our legislators are not sufficiently apprized [sic] of the rightful limits of their power; that their true office is to declare and enforce only our natural rights ... and to take none of them from us. No man has a natural right to commit aggression on the equal rights of another; and this is all from which the laws ought to restrain him ... and the idea is quite unfounded, that on entering into society we give up any natural right.

Letter of Thomas Jefferson to Francis W. Gilmer, June 27, 1816, *Writings*, v. 10, p. 32. Stated differently, without the rights attendant to property, there is no liberty.

4. The Constitution of West Virginia, at Article III, Section 1 expressly recognizes this Jeffersonian/Lockean view of natural rights whereby life and liberty is realized by the enjoyment of the use of one's property:
> All men are, by nature, equally free and independent, and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity, namely: The enjoyment of life and liberty, with the means of acquiring and possessing property, and of pursuing and obtaining happiness and safety.

When the use and enjoyment of one's property is unreasonably constrained, it logically follows that the natural rights of life and liberty become severely restricted.

5. Article III, Section 3-3 of the Constitution of West Virginia provides: "Government is instituted for the common benefit, protection and security of the people, nation or community."

ignores the clear import of the Legislature's limiting language that for there to be applicability of West Virginia Code § 17C-5-2(e), the use of a subject vehicle must be in a location "nonetheless open to the use of the public for purposes of vehicular travel." By the addition of this instructive language, the Legislature understood the limitations of its police powers, consistent with the rights of private property owners. Mr. Beckett's use of his ATV was purely private, on private family land, for purely private purposes. There is no evidence in the record whatsoever that this private use had any impact on other citizens. Likewise, there is no evidence that Mr. Beckett's behavior in any way would have any adverse impact on any other citizen. To the extent that the Department of Motor Vehicles ("DMV") contends that the State has an interest in regulating or constraining Mr. Beckett's private behavior on his private family farm, it failed to introduce such evidence by which a consideration of reasonableness for state action might be made. An interest in saving Mr. Beckett from the consequences of his own stupidity, though admittedly a tempting endeavor, is insufficient to overcome Mr. Beckett's right to do as he pleases.

The Majority opinion furthermore fails because, by statutory definition, an ATV does not come within the definition of "vehicle" under West Virginia Code § 17C-5-2(e) ("drives a *vehicle* in this state"). The term, "vehicle," is defined by West Virginia Code § 17A-1-1(a) (2010) as "every device in, upon or by which any person or property *is* or *may* be transported or drawn *upon a highway*." (Emphasis added). Here, Mr. Beckett was not transported or drawn upon a high-

way, so the term "is" is not applicable. The term "may," being permissive, requires that the transportation device may properly be used upon a highway. By statutory definition, however, an ATV is neither designed for nor permitted to be used on highways. West Virginia Code § 17A-1-1(ii) defines an "ATV" as "any motor vehicle *designed for off-highway use*." (Emphasis added). Furthermore, West Virginia Code § 17F-1-1(a) (2004) provides:

> No all-terrain vehicle may be operated in this state:
>
> (1) On any interstate highway except by public safety personnel responding to emergencies; or
>
> (2) On any road or highway with a center line or more than two lanes except for the purpose of crossing the road, street or highway . . . .

An ATV may not be used upon a highway—a necessary requisite to · applicability of West Virginia Code § 17C-5-2(e) to the conduct at issue. While Mr. Beckett's use of an ATV on his family farm after consuming alcohol may be condemned on any number of moral and health-related grounds, his use of the ATV simply is not covered by the statute for DUI purposes.

To support its expansive creativity, the Majority asserts that its research, listed in a footnoted string citation, shows that "nearly two dozen jurisdictions" support its logic. A careful review, however, reveals that none of the cited cases, save one, supports the Majority's conclusions that the private use of an ATV by an individual on his private property while intoxicated is criminal conduct.[6]

---

**6.** *Madden v. State*, 555 S.E.2d 832, 834 (Ga. Ct. App. 2001), involved an individual driving a car trying to run down a pedestrian in a mobile home park. *State v. Allen*, 431 S.E.2d 563, 564 (S.C. 1993), involved an individual driving a truck in another person's private driveway. *Sanders v. State*, 846 S.W.2d 651 (Ark. 1993), involved a private roadway open to public use. *People v. Malvitz*, 14 Cal. Rptr. 2d 698, 701 (Cal. App. Dep't Super. Ct. 1992), involved a private paved road in a storage area open to members of the storage area. *Chilcutt v. State*, 544 N.E.2d 856, 858–59 (Ind. Ct. App. 1989), set forth that the "facts reveal that there were third parties who were permitted on this property, an example being the owners of the property, who could

have been endangered by defendant's operation of the vehicle." *Allen v. Girard*, 745 P.2d 192, 194 (Ariz. Ct. App. 1987), involved an individual "driving on the wrong side of the road in La Reserve, an Estes Company subdivision development project. It is undisputed that La Reserve was private property at the time, although it was not appellant's property." *State v. MacDonald*, 527 A.2d 758, 759 (Me. 1987), involved the operation of a motor vehicle in a private driveway. *Zink v. State*, 448 So. 2d 1196, 1197 (Fla. Dist. Ct. App. 1984), involved a trespassing individual " 'spinning donuts' in the dirt of a construction site on private property owned by Alton Box Company. He had no possessory or proprietary interest in the property." *Dayhoff v. State, Motor*

By no measure does the Majority opinion find legitimacy in constitutional, statutory, or common law. While the rights with which we are endowed are scarcely a topic of measured circumspection in our fast moving society, it falls to our courts to be vigilant that such natural rights are protected. This includes, as here, the importance of protecting the right to the private use and enjoyment of one's private property.

In 1816, Jefferson wrote to his friend, Samuel Kercheval, a Virginia writer: "The true foundation of republican government is the equal right of every citizen, in his person and property, and in their management." Letter of Thomas Jefferson to Samuel Kercheval, June 12, 1816, *Writings*, v. 10, p. 39. This quotation crowns the courtroom of the Supreme Court of Appeals of West Virginia. How ironic.

*Vehicle Div.*, 595 P.2d 1051, 1053 (Colo. App. 1979), involved a parking lot located on private property used by the public. *People v. Guynn*, 338 N.E.2d 239, 241 (Ill. App. Ct. 1975), stated that "[t]here is nothing in the record to indicate the circumstances surrounding defendant's arrest. There is no showing where defendant was when arrested or what he was doing at that time." *State v. Layssard*, 310 So. 2d 107, 110 (La. 1975), set forth that a

> witness was looking out his front door when he caught a glimpse of a vehicle pass on the road in front of his house, heard the noise of gravel, and immediately heard the sound of a vehicle striking something. He looked up and saw the defendant behind the wheel of his truck, having crashed through a fence and into a utility line and into a tree in a neighbor's yard across the street.

*State v. Bruce*, 231 A.2d 107, 109 (Vt. 1967), set forth that "[t]he attendant at the station first saw the respondent's car as it was pulling off the road and entering the driveway into the filling station." *Farley v. State*, 170 So. 2d 625, 627 (Miss. 1965), set forth that "[a]ctually the state's evidence showed that the defendant, while under the influence of intoxicating liquor, not only drove the motor vehicle down the driveway, but that he also drove it onto the right-of-way of the highway and to the edge of the pavement." *State v. Piette*, 16 Conn. Supp. 357, 357 (Conn. Super. Ct. 1949), set forth that "it would appear that the operation [of the vehicle] was upon property which had at least a quasi-public use." *State v. Weston*, 202 S.W.2d 50, 53 (Mo. 1947), set forth that

> [a] highway patrolman saw the appellant drinking in the Womack Hotel about 11 o'clock in the morning. The city marshal of Fredericktown testified that he saw the appellant drive an automobile from in front of the Womack Hotel, on the south side of the courthouse, towards the east. A state liquor officer saw him get out of the automobile in front of Hunter's Cafe. At that time he staggered as he walked. In a few minutes the city marshal arrested him.

*State v. Dowling*, 216 N.W. 271 (Iowa 1927), set forth that the defendant was driving "over and upon the streets of Webster City, Iowa." *Gray v. Commonwealth*, 477 S.E.2d 301, 302 (Va. Ct. App. 1996), involved a privately owned parking lot open to the public. *Locklear v. State*, 614 A.2d 1338, 1341 (Md. Ct. Spec. App. 1992), involved a trespasser who "grab[bed] a white female ... by the hair, dragging her towards the Dodge truck." The defendant "had no permission to drive his truck on the Genstar property." *Id. State v. Frank*, 442 N.E.2d 469, 470 (Ohio Ct. App. 1981), set forth that "the defendant-appellant conceded that she had been operating a late model automobile on the parking lot of a shopping center in the early morning hours of April 26, 1980." *Commonwealth v. Campbell*, 28 Pa. D. & C. 260, 260 (1936), set forth that "[t]he facts are that on June 13, 1936, defendant, while under the influence of intoxicating liquor, drove his car for a distance of about two blocks on the West Hill road located in Snowden Township." This was a privately owned road maintained by a coal company that was used by many other people, including a settlement known as Montour Ten Patch. *Id.*

One cannot make any conclusion as to the precedential effect of *State v. Watson*, 787 P.2d 691, 692 (Haw. 1990), because there was no factual development in the written opinion. The only case which might lend support to the Majority opinion is *Lynch v. Commonwealth*, 902 S.W.2d 813, 814 (Ky. 1995), wherein the

> Appellant had finished work and returned to his home situated on agricultural property which is reached by a private driveway (one-quarter of a mile or more) from the public road to the dwelling. A confrontational argument at the home ensued, which resulted in the placing of a 911 telephone call. Appellant, while continuing to drink intoxicants, then operated his motor vehicle from the dwelling to approximately halfway down the drive, where he encountered two police vehicles which had entered the driveway.